UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR07-003S |
| | ) | |
| RICARDO PIERRE | ) | |

# SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SENTENCE CONSIDERATION IN LIGHT OF RITA V. UNITED STATES AND UNITED STATES V. LIBBY, AND IN RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

## I. *Rita v. United States*

In 2005 the United States Supreme Court dramatically changed sentencing practice and procedure in federal criminal cases by holding the mandatory sentencing guidelines unconstitutional. *United States v. Booker*, 543 U.S. 220, 259 (2005). The *Booker* decision left the guidelines intact as an advisory part of the sentencing process guided by 18 U.S.C. § 3553(a). *Id*. Lower courts were then left to interpret what role the advisory guidelines would play in post-Booker sentencing. *See, e.g., United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (guidelines have heightened importance, but not presumed reasonable); *United States v. Mykytiuk*,415 F.3d 606, 608 (7th Cir. 2005) (guideline sentence presumed reasonable). The Court's recent decision in *Rita v. United States*[1], however, has shed some light and made obsolete, for the most part, the intervening circuit court interpretations regarding the weight of the suggested advisory guideline ranges in the district court's sentencing determination.

In *Rita* the Supreme Court explained the presumption of reasonableness in review of a sentence imposed. The presumption is rebuttable and not binding, but, more importantly, applies

[1] 551 U.S. ___, 2007 U.S. LEXIS 8269 (2007).

to the circuit court appellate review, not the district court determination. *Rita*, 2007 U.S. LEXIS 8269, **16-17. The Court reasoned that Congress had directed both the Sentencing Commission and the sentencing judge to determine the appropriate sentence, or guidelines, with consideration of 18 U.S.C. § 3553(a). *Id*. at **17-19. Essentially, if the sentencing court and the guidelines arrive at the same sentencing range, independently, then the Court held that decision could be accorded some presumption of reasonableness. *Id*. at **16-19. The directed sentencing considerations, the court's and the Commission's, however, distinctly differ and thus render the presumption not binding.

The sentencing court must follow 18 U.S.C. § 3553(a). The statute instructs the district court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in subsection (a)(2).[2] The district judge must also assess, analyze and consider the particular facts of the present offense and the unique characteristics of the defendant before the court. 18 U.S.C. § 3553(a)(1). The judge then uses that individual information to determine an appropriate sentence.

Congress instructed the Commission differently. The Commission was tasked to write guidelines for "categories of offenses" and "categories of defendants," (28 U.S.C. § 994(c) & (d)), in a manner consistent with 18 U.S.C. § 3553(a)(2). 28 U.S.C. § 991(b)(1)(A). The Commission was not instructed to consider the individual characteristics of each defendant (clearly not possible when creating general guidelines)[3], nor was it instructed to create guidelines which effectuate the

---

[2] The statute requires the sentence to reflect the basic aims of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

[3] For example, the guidelines do not factor into consideration:
- age
- guidance as a youth
- marital status
- family ties
- employment record
- economic hardship
- assimilation
- education
- race and ethnicity

parsimony principle. A presumption notwithstanding, the Commission created the advisory guideline ranges based on information which differs from the sentencing judge's mandate in each individual case.

After *Booker* but prior to *Rita*, the First Circuit District Courts have been sentencing defendants based on the improper standard of heightened importance announced in *Jimenez-Beltre*.[4] Here in Federal District Court for the District of Rhode Island the common practice involved the sentencing court calculating the advisory guideline range as a starting point, and then determining if the facts of the case cut against that range warranting either an upward or downward variance or departure. This method plainly conflicts with the *Rita* decision because the advisory range cannot be the central consideration or a heightened consideration.

This Court must comply with the Supreme Court's direction as well as 18 U.S.C. § 3553(a). First, the advisory guideline range is not presumed appropriate in the district court's sentencing

---

- substance abuse
- gambling addiction
- victimization by violence
- sexual assault victim
- mental illness
- emotional state
- mental retardation
- developmental disabilities
- physical disabilities
- medical condition
- prior good works
- military service
- community and public service
- post arrest and post plea rehabilitation

[4] The First Circuit proclaimed that the advisory guideline range is not just a mere factor in the § 3553(a) list of considerations. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006); *see also United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4(1st Cir. 2006). The Court held that the guidelines should carry more weight than the other considerations because they "represent the only integration of the multiple sentencing factors set forth in § 3553(a), often reflect past practice, and bear the imprimatur of the Sentencing Commission." *Thurston*, 456 F.3d at 215 (quoting *Smith* 445 F.3d at 4). Per *Rita*, however, the sentencing court must make its sentencing considerations separate and independent from the guidelines assessment. *Rita*, 2007 U.S. LEXIS 8269, **17-19.

determination and should not be accorded any superior consideration over the other § 3553(a) sentencing factors. *Rita*, 2007 U.S. LEXIS 8269, **23-25. While the Court must still consider the guideline range, it is among the listed factors of § 3553(a), it must also consider other facts not considered by the Commission in creating the guidelines, whether by prohibition, policy, or inability. These facts include all manner of individual characteristics of the defendant.[5] The Court must also consider whether the defendant's individual circumstances reflect a heartland case, whether the guidelines properly reflect § 3553(a) considerations, and if the facts and circumstances presented call for a different sentence for any other reason. *Rita*, 2007 U.S. LEXIS 8269, **24. *See also*, 18 U.S.C § 3661 (prohibiting limitation of information regarding the defendant in determination of appropriate sentence). This allows the sentencing judge to decline the imposition of a guideline sentence for both individual fact specific reasons, as well as broad policy disagreements.[6]

The *Rita* decision reinforces the discretionary power inherent in the district court for sentencing purposes as revealed in *Booker*. Applied here, that discretion serves to make an extremely significant impact on Mr. Pierre. He faces not only a high statutory mandatory minimum sentence (enhanced by a government filing under 21 U.S.C. § 851), but also the mythologically absurd guideline range (also enhanced by the government's filing). This Court must consider all of the facts raised for sentencing consideration, whether supported, discouraged, or prohibited by the guidelines, and determine their combined effect in the ultimate sentence.[7] The court should find that *Rita*, like *Booker*, supports that court's discretionary power to sentence significantly below the guidelines and impose a sentence sufficient, but not greater than necessary.

---

[5] *Infra*, note 3.

[6] Under *Rita*, giving a case a full § 3553(a) analysis absent extra influence from the advisory guidelines, a sentencing judge can clearly find that a particular guideline is not justified. *Rita*, 2007 U.S. LEXIS 8269, **24. This particular holding basically overrules the First Circuit's decision in *United States v. Pho*. *See*, 433 F.3d 53, 62 (1st Cir. 2005) (allowing discretion only within the ambit of the individualized factors spelled out in § 3553(a)).

[7] *See Rita*, 2007 U.S. LEXIS 8269, **24-25, **32-35.

## II. *United States v. Libby*

The outcome of the *Libby* case obviously has more persuasive than direct impact in this instance. It may well be regarded for some time as a prime example of the benefit of having friends in high places. For Mr. Pierre, the Court should focus on the President's assertion that the advisory guideline range calculated by the court for Mr. Libby was *excessive*. *See* Statement by the President on Executive Clemency for Lewis Libby (July 2, 2007) (attached) (emphasis supplied). A jury found Mr. Libby guilty of perjury and obstruction of justice and faced a low end guideline sentence of 33 months. Mr. Pierre pled guilty to possessing an ounce crack cocaine for distribution, with a low end guideline sentence of 262 months. Mr. Libby, in concert with others, impaired the investigation of crimes which resulted in the outing of an active covert CIA agent with connections in a foreign country (including foreign agents and other contacts). Mr. Libby's conduct contributed to the destruction of that network and likely endangerment of those foreign nationals who worked with the CIA, and also those who had only benign contact with the agent. Mr. Pierre, on the other hand, represents an all too familiar trend of young black men from Providence turning to drug distribution in order to make a living, knowing that there is an active customer base consistently seeking the product. When looking at these two cases, even including the mitigating factors for both Messrs. Libby and Pierre, the Court should reach two conclusions. First, it is really hard to swallow the President's description of Mr. Libby's sentence as *excessive* considering the national security impact. Second, it is nearly impossible to consider Mr. Pierre's advisory guideline range *not* excessive given the seriousness and smallness of his offense. Although the *Libby* case does not directly impact here, this Court should note the Executive branch's impression of excessiveness under the guidelines.

## III. Response to Government's Sentencing Recommendation

The government's sentencing memorandum, including its objections to Mr. Pierre's motions, fails to explain why the advisory guideline range, at least 21 years and 10 months in prison, represents an appropriate sentence in this instance, or that it complies with the parsimony clause of § 3553(a). The government also fails to adequately counter Mr. Pierre's recommendation for a shorter period of incarceration.

A. Downward Departure for Overstatement of Criminal History

The government argues that Mr. Pierre's individual situation does not closely track the example set out in the commentary of guideline § 4A1.3.[8] That has no bearing. The sentencing guidelines are generalizations (*see Jimenez-Beltre*, 440 F.3d at 518) and cannot possibly cover every unique individual fact pattern which may or may not warrant a particular departure. While Mr. Pierre would agree that the defendant described in the application note may be due consideration of a downward departure, facts which warrant departure consideration are certainly not limited to that situation. More than one fact pattern may support this departure, and the sentencing judge is in the best position to assess and decide its applicability.

Moreover, the government is mistaken in its assertion that a defendant's present criminal history category is a measure of his future recidivism. Gov't Memo at 2. The Commission has aspired to create its guideline criminal history considerations to support the purposes of sentencing under § 3553(a)(2). Those consideration reflect, in part, the possibility of recidivist behavior. The Commission has studied past sentences to determine if the criminal history calculations under the guideline did indeed reflect or predict recidivist behavior. Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines, United States Sentencing Commission (May 2004) ("Recidvism Report") (available at www.ussc.gov/publicat/Recidivism_General.pdf).[9] The study allowed the Commission to conclude that there was a general correlation between criminal history calculations under the guidelines and recidivist behavior. *Id*. at 15. That declaration by

---

[8] Downward Departures. A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited under subsection (b)(2)(B), due to the fact that the lower limit of the guideline range for Criminal History Category I is set for a first offender with the lowest risk of recidivism.
U.S.S.G. § 4A1.3, App. nt. 3 (2006) (emphasis added).

[9] The study sample included defendants sentenced between 1992 and 2001 who had completed their initial incarceration and had completed two years of supervised release or violated the terms of their release during that period. Recidvism Report at 3-4. The study did not include defendants later deported or those whose sentences continued beyond 2001. *Id*.

itself, however, means little because the correlation is generalized and the study failed to include other material factors. First, as stated in the guidelines, the criminal history framework was created even though "other factors [which] correlate highly with the likelihood of recidivism, e.g. age and drug abuse," were not included. U.S.S.G. § 4, Introductory Commentary (2006). Other factors were studied for the report, though not part of the guideline calculations, revealing positive and negative correlations with recidivism. *Id*. at 11-14.[10] Ultimately, the conclusion should be drawn that the criminal history calculations in the guidelines are imperfect and not so much accurate predictors of recidivism as they are limited general arguments of propensity. In fact, the Commission recognized that education and substance abuse programs do lower recidivism rates. *Id*. at 15-16. Finally, the study did not examine the effects of particularly long terms of incarceration, or the career offender enhancement, on recidivism. The government's assertion regarding Mr. Pierre's high potential to re-offend, therefore, is not supported.

The government is also misguided its attempt to enhance the departure standard under U.S.S.G. § 4A1.3(b) by applying *United States v. Gendraw*, 337 F.3d 70 (1st Cir. 2003). In *Gendraw*, a First Circuit panel stated that a career offender could get the benefit of a departure under § 4A1.3 if the circumstances were exceptionally different from the typical case. *Id*. at 72. While this standard echoes the heartland analysis for departure, it ignores the fact that the guideline has a standard written into it:

> Standard for Downward Departure. If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. §4A1.3 (2006).

That standard does not suggest any reference to or weighing of other cases. The court should look at this departure on its own merits.

The government also misses the point in calculating Mr. Pierre's criminal history points. It argues that he should have at least 3 additional points for his conviction in K2-2003-0044A, PSR

---

[10] Studying trends based on factors of gender, age, race and ethnicity, employment, education marital status, substance abuse, current offense level, current charge, sentence type, length of sentence, departure, and recidivating event.

¶ 31, but for a technical application of the guidelines. In fact that case and P2-2003-0138A (PSR ¶ 30) were part of the same investigation; one sale was in Cranston (Providence County) and one in Warwick (Kent County). The State of Rhode Island typically charges these types of instances under one indictment as part of a state-wide grand jury process. As a single indictment, the government would have no argument whatsoever as to points counted. Why the State charged these incidents separately is not known; review of the charging papers clearly show the two incidents connected. *See* attached. Regardless, Mr. Pierre did not benefit from any slanted calculation of his criminal history points.

On its own merits, even to the government's heightened standard, Mr. Pierre's criminal history calculations overstate the seriousness of his criminal record. Before application of the career offender designation, Mr. Pierre's has a criminal history category IV. That alone distinguishes his situation from the vast majority of career offenders before this court. Further, much of his criminal record is dated. He has two convictions from 1999 and then the convictions from the 2002 sting (charged in 2003). He is clearly an atypical career offender and deserving of a downward departure on that basis.

B. Variance

The district court must entertain any and all facts relating to the defendant at sentencing in the context of § 3553(a). *See Rita*, 2007 U.S. LEXIS 8269, **24-25, **32-35. *See also* 18 U.S.C. §3661. The government's continued disregard for the law on this point, relying only on the guideline's *preferred* factors, is best described as backward. Whether guideline preferred or not, distinct or not, mitigating or not, the court must consider all facts at sentencing.

The government states that Mr. Pierre cannot use his less than optimal upbringing as an "excuse" for his behavior. Despite the government's mischaracterizations, Mr. Pierre has not sought to excuse any of his behavior and is not blaming his mistakes on his childhood. He came before the court, pled guilty, and accepted responsibility for his actions.

The court needs to consider all of the available information about a defendant in order to determine the appropriate sentence. The facts presented regarding Mr. Pierre are all of those that make him a whole individual. The advisory guideline ranges are based on the offense and the criminal record only; they do not consider myriad factors required under § 3553(a)(1). *Infra*, note

3. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Only by presenting those facts, raising those issues, and exposing them to the court can the court then recognize a defendant, and sentence him, as an individual.

The government does point out the most aggravating fact here of Mr. Pierre's prior drug trafficking convictions. Those convictions resulted in his designation as a career offender, and also the increase in his mandatory minimum and guideline sentences pursuant to the government's 21 U.S.C. § 851 notice. The government describes Mr. Pierre's behavior as "relentless" drug dealing, and also calls him a "career drug dealer." Gov't Memo at 4. That characterization carries no weight in sentencing. The First Circuit has directed the sentencing courts to consider a defendant's position in the hierarchy of the cocaine trade. *See Pho*, 433 F.3d at 64. Although the Commission has developed loose definitions for various levels of involvement in the cocaine trade, career drug dealer is not among them. *See* United States Sentencing Commission, Report to the Congress: Federal Cocaine Sentencing Policy, 18 (May 2007). Considering all of that information, little argument can be made that Mr. Pierre ranks far above a street level dealer.

Mr. Pierre had a rotten childhood, suffered physical abuse, and now suffers from addictions to alcohol and marijuana.[11] While those reasons may not support specific reductions in a particular sentence on their own, the court must assess Mr. Pierre as a whole living and breathing person with both warts and beauty marks. Those aspects are not just argument points, they are part of his person.

## IV. Conclusion

The government cannot justify the advisory guideline range in this case. The guideline range is artificially inflated by the government's § 851 notice and the unjustified treatment of crack cocaine

[11] The Commission did not consider drug addiction when developing the criminal history calculations in Chapter 4 of the guidelines, and also states that addiction has a positive correlation with reoffending in U.S.S.G. § 5H1.4 (2006). It also recognized, however, that substance abuse treatment significantly lowers that risk of recidivism. Recidivism Report at 15-16.

in federal sentencing. The President's description of I. Lewis Libby's sentence as excessive pales in comparison to the impact and weight of the guidelines on Mr. Pierre. In *Rita*, the Supreme Court again states that this Court has full discretion under 18 U.S.C. § 3553(a) to impose the appropriate sentence. The Court must ultimately ask itself how much time in prison an ounce of crack cocaine is truly worth for Mr. Pierre. The answer is plainly not 22 years. The appropriate sentence here is the mandatory minimum sentence of 120 months in prison.

Respectfully submitted
Ricardo Pierre
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was electronically filed with notification to Heather McLoughlin, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on July 20, 2007.

/s/ Kevin J. Fitzgerald