UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
UNITED STATES OF AMERICA               )
                                       )
       v.                              )      Cr. No. 07-003 WES
                                       )
RICARDO PIERRE,                        )
                                       )
            Defendant.                 )
_____ )

## MEMORANDUM OF DECISION

WILLIAM E. SMITH, Chief Judge.

The First Step Act of 2018 ("the Act") was enacted into law on December 21, 2018, with bipartisan support. See Pub. L. No. 115-391, 132 Stat. 5194. Section 404 of the Act provides that a district court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Id. § 404(b). Defendant Ricardo Pierre moved for a reduced sentence under § 404 of the Act. Def.'s Mot. to Reduce Sent. ("Def.'s Mot."), ECF No. 54. The Government opposed the Motion, arguing that Pierre is ineligible for relief. See Gov't Resp. in Opp'n, ECF No. 57; see also Gov't Supp. Resp. in Opp'n, ECF No. 60. After hearing argument, the Court issued an Order granting Pierre's motion and resentencing him to time served and 6 years of supervised release; this Memorandum of Decision sets forth the explanation for this

holding.  See Order, ECF No. 63; see also Stip. Reduc. Sent.,
ECF No. 64.

I.   BACKGROUND

In 1984, Congress enacted the Sentencing Reform Act of 1984
(the "1984 Act"), 98 Stat. 1987, in an effort "to increase
transparency, uniformity, and proportionality in sentencing."
Dorsey v. United States, 567 U.S. 260, 265 (2012).  The 1984 Act
directed the U.S. Sentencing Commission to promulgate guidelines
to assist federal judges in determining sentences.  Id.  (These
Guidelines, we have known since 2005, are advisory, not
mandatory.  See United States v. Booker, 543 U.S. 220, 245
(2005).)

In 1986, Congress enacted a drug-specific sentencing
statute, the Anti-Drug Abuse Act of 1986 ("1986 Drug Act"), 100
Stat. 3207, which set forth mandatory minimum and maximum
penalties for drug offenders, principally based on the variety
and quantity of the drug involved in an offense.  See 21 U.S.C.
§ 841(b)(1)(A)-(C).  The mandatory minimums set forth in § 841
were far more punitive for cocaine base (or "crack cocaine")
offenses than those involving powder cocaine involving the same
quantities.  Employing a 100:1 crack-to-powder ratio, the 1986
Drug Act imposed a mandatory minimum penalty of 5 years'
imprisonment for possession with intent to distribute 5 grams of
crack cocaine or 500 grams of powder cocaine, and 10 years'

imprisonment for possession with intent to distribute 50 grams of crack cocaine or 5000 grams of powder cocaine. See id.; see also Pub. L. No. 99-570, 100 Stat. 3207-3.

Sentencing statutes trump the Guidelines. Dorsey, 567 U.S. at 266. Thus, regardless of the Guidelines range assigned to an individual offender at sentencing, a district judge may only sentence an offender within the statutorily-provided mandatory minimum and maximum penalties. Id. at 266-67 (citing 28 U.S.C. § 994(a), (b)(1); USSG § 5G1.1; Neal v. United States, 516 U.S. 284, 289-90, 295 (1996)). Sentencing statutes also drive the Guidelines. The U.S. Sentencing Commission incorporated the 1986 Drug Act's mandatory minimums into its first version of the Guidelines by having them closely track the low end of the mandatory statutory ranges. Id. at 267.

Between 1986 and 2010, judges, the U.S. Sentencing Commission, law enforcement officials, and the public at-large decried the 100:1 crack-to-powder cocaine ratios for its abject unfairness and racial bias. See, e.g., United States v. Perry, 389 F. Supp. 2d 278, 303-08 (D.R.I. 2005) (recounting at length the history of the crack/powder disparity in federal sentencing and the U.S. Sentencing Commission's work on the issue, and concluding that "it is virtually impossible to find any authority suggesting a principled basis for the current disparity in sentences"). The U.S. Sentencing Commission issued

four reports – in 1995, 1997, 2002, and 2007 – criticizing the disparity because it did not promote uniformity or proportionality; its suggestion that crack cocaine inflicted far greater harm than powder cocaine was not scientifically supported; and its punitive hammer fell disproportionately on minority communities in America.  Dorsey, 567 U.S. at 268-69. The Sentencing Commission, in concert with district judges and advocates from all sides of the criminal justice system, asked Congress to pass legislation lowering the crack-to-powder ratio and for the Sentencing Commission to have the authority to modify the Guidelines accordingly.  Id. at 269.

Congress (finally) acted in 2010, passing the Fair Sentencing Act of 2010, which took effect on August 3, 2010. 124 Stat. 2372.  In response, the Sentencing Commission promulgated emergency Guidelines amendments that went into effect on November 1, 2010.  See 75 Fed. Reg. 66188-02 (2010); see also 76 Fed. Reg. 24960-01 (2011).  Under the Fair Sentencing Act of 2010, the new mandatory sentencing range for possession with the intent to distribute less than 28 grams of crack cocaine is zero to 20 years' imprisonment, and the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of crack cocaine is 5 to 40 years' imprisonment.  See 124 Stat. 2372 (codified at 21 U.S.C. § 841(b)(1)).  Thus, the trigger for the mandatory

4

minimum of five years was increased from 5 grams to 28 grams of crack cocaine.

The more lenient mandatory minimums set forth in the Fair Sentencing Act applied to any offender who committed a crack cocaine offense before August 3, 2010, but was not sentenced until after that date. Dorsey, 567 U.S. at 264. The more lenient penalties were not, however, retroactive and, therefore, sentences meted out before August 3, 2010 were left unchanged. Id. at 277-78. This, of course, included those Defendants who were sentenced during the mandatory Guidelines era and before Kimbrough v. United States, which established that sentencing judges have the discretion to sentence defendants outside the Guidelines range for crack cocaine offenses to achieve "a sentence sufficient, but not greater than necessary." 552 U.S. 85, 111 (2007) (quotations omitted); see also Spears v. United States, 555 U.S. 261, 264 (2009) (recognizing that district courts have the discretion "to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case."). These defendants were by and large sentenced to significantly longer terms of imprisonment because judges lacked discretion to vary from the Guidelines even if the sentences were patently unfair. The frustration of district judges during this period was palpable.

5

See, e.g., United States v. Smith, 359 F. Supp. 2d 771, 781-82 (E.D. Wis. 2005) (Adelman, J.) (applying the § 3553(a) factors and rejecting the Guidelines' 100:1 ratio in favor of a 20:1 ratio); United States v. Clay, No. 2:03CR73, 2005 WL 1076243, at *6 (E.D. Tenn. May 6, 2005) (Greer, J.) (applying the § 3553(a) factors and noting the "unjustified disparity in the 100:1 [quantity] ratio for punishment between cocaine base or crack and powder cocaine" as reason for imposing a sentence far below the Guidelines range); United States v. Castillo, No. 03 CR. 835 (RWS), 2005 WL 1214280, at *5 (S.D.N.Y. May 20, 2005) (Sweet, J.) (applying the § 3553(a) factors and imposing a non-Guidelines sentence using a 20:1 crack-to-powder ratio); Perry, 389 F. Supp. 2d at 300-08 (discussing the "crack vs. powder cocaine controversy"); David M. Zlotnick, The Future of Federal Sentencing Policy: Learning Lessons From Republican Judicial Appointees in the Guidelines Era, 79 U. Colo. L. Rev. 1 (2008). Indeed, some judges do not think the Fair Sentencing Act of 2010 went far enough and have adopted a 1:1 crack-to-powder ratio for sentencing. See, e.g., United States v. Williams, 788 F. Supp. 2d 847, 891-92 (N.D. Iowa 2011) (Bennett, J.).

Fast forward to December 2018: After an unusual but effective coalition of advocates for reform coalesced around the issue, Congress passed a comprehensive criminal justice reform bill titled the First Step Act of 2018. Section 404 of the Act

6

provides relief, at the discretion of the sentencing court, to certain federal defendants sentenced for crack cocaine offenses prior to the Fair Sentencing Act of 2010. See 132 Stat. 5194.

Defendant Ricardo Pierre is one such defendant. On January 10, 2007, a federal grand jury indicted Ricardo Pierre on two drug counts. In Count I, Pierre was indicted on possession with intent to distribute five grams or more of cocaine base, and in Count II, Pierre was indicted for possession with intent to distribute powder cocaine. See Indictment, ECF No. 1. Count I carried a mandatory minimum sentence of 5 years' incarceration. See Attachment to Indictment, ECF No. 1-2 (citing 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)).

The Court denied a motion to suppress in February 2007, and Pierre thereafter lodged a Notice of Intention to Plead Guilty. On March 7, 2007, the Government filed an Information charging prior offenses under 21 U.S.C. § 851, enhancing Pierre's mandatory sentencing range from 5 to 40 years to 10 years to life imprisonment, and enhancing his mandatory term of supervised release from 4 years to 8 years. See Information Charging Prior Conviction, ECF No. 20.[1] Pierre's Guidelines

---

[1] The so-called § 851 enhancement is a uniquely powerful prosecutorial cudgel: it allows the Government, at its sole discretion, to file an additional charge by information that a defendant has been previously convicted of a drug trafficking offense thereby ratcheting up the mandatory minimum applicable from 5 to 10 years, or 10 to 20 years, or 20 years to life. The

range was 262 to 327 months' imprisonment at the time of his sentencing, with a Total Offense Level of 34 and Criminal History Category of VI.

The Court accepted Pierre's guilty plea on March 12, 2007. During the plea colloquy, Pierre admitted to possessing with the intent to distribute 28.77 grams of cocaine base. Change of Plea Tr. 10-15, ECF No. 31-1. The U.S. Probation Presentence Report also reflected this quantity. On July 27, 2007, the Court sentenced Pierre to 188 months' incarceration as to each count, to run concurrently; supervised release of 8 years on Count I and 6 years on Count II, also to run concurrently; and a special assessment of $200. See Judgment, ECF No. 25. This sentence was 68 months greater than the applicable statutory minimum of 10 years, and 28% below the low end of the Guidelines range.

On February 5, 2019, with the assistance of counsel, Defendant Ricardo Pierre moved to reduce his sentence pursuant to the First Step Act of 2018. After serving upwards of 144

---

threat of this upward ratchet on defendants is obvious. And during the administration of Attorney General Ashcroft, local U.S. Attorney's Offices were directed as a matter of policy to charge the offense that would "generate the most substantial sentence under the Sentencing Guidelines" and were strongly encouraged to use statutory enhancements, including under § 851, "in all appropriate cases." Mem. from Att'y Gen. John Ashcroft Setting Forth Justice Dep't Charging and Plea Policies (Sept. 22, 2003), reprinted in 16 Fed. Sent. R. 129 (Dec. 1, 2003). Since around 2008, in this Court's experience, the use of the § 851 cudgel has been mercifully rare.

months disciplinary-action free, Pierre was incarcerated at the Houston House, a Bureau of Prisons Residential Reentry Center, with an expected release date of July 4, 2019.  <u>See generally</u> Def.'s Mot.  This Court granted the Motion by short order after oral argument.  Order, ECF No. 63.

## II.  DISCUSSION

Section 404 of the Act states, in relevant part:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term <u>"covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010</u> (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(Emphasis added.)  Defendant argues that the Court has the discretion to impose a reduced sentence under the Act because he was convicted of a covered offense.  His conviction falls within the definition of a "covered offense," he says, because he was convicted of violating a statute (<u>viz.</u>, 28 U.S.C. § 841(a)(1) and (b)(1)(B)) that was "modified by section 2 or 3 of the Fair Sentencing Act of 2010."  As explained above, the pertinent part of the Fair Sentencing Act increased the quantity that triggers a 5 year mandatory minimum sentence from 5 grams to 28 grams of

9

crack cocaine.  Compare 21 U.S.C. § 841(b)(1)(B) (2005), with 21 U.S.C. § 841(b)(1)(B) (2010).

The Government counters that the exact violation for which Pierre was convicted under Count I, according to the change of plea colloquy and unobjected-to PSR, was possession with the intent to distribute 28.77 grams of crack cocaine.  Had Pierre been indicted after the Fair Sentencing Act of 2010 went into effect, the Government reasons, the indictment would have charged him with 28 grams or more of cocaine base, as opposed to 5 grams or more, and Pierre would have been subject to the same mandatory minimum as before.  See Gov't Resp. in Opp'n 3, ECF No. 57.  In advancing its position, the Government argues that finding Pierre eligible for a sentence reduction would amount to "an unjustified windfall," because identically-situated defendants sentenced under the Fair Sentencing Act would not have been eligible for the same relief.  Id.

Reasonable minds could disagree about whether, in the phrase "a violation of a Federal criminal statute, the statutory penalties for which were modified by [the Fair Sentencing Act of 2010]," it is "[the defendant's specific] violation of a Federal criminal statute [as supported by the underlying record]," or the "violation[, for which the defendant was charged and pled guilty,] of a Federal criminal statute" that the Fair Sentencing Act of 2010 must modify in order to deem it a covered offense

10

under the First Step Act.  Put differently, in determining a
defendant's eligibility for relief under the First Step Act, it
is not clear whether Congress intended the district court to
look to the actual offense conduct for which the defendant was
convicted (for example, using the transcript from the change of
plea colloquy to determine drug quantity), or to look simply to
the offense of conviction (i.e., the federal criminal statute
the defendant violated).

Both the Government's and Defendant's arguments are
plausible on their face, and there is no legislative history
available on Section 404 to lend clarity to Congressional
intent.  But ultimately, joining other courts that have weighed
in on the issue, the Court concludes that Defendant's
construction is more sensible.  See, e.g., United States v.
Tucker, 356 F. Supp. 3d 808 (S.D. Iowa 2019); United States v.
Davis, No. 07-CR-245S, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019).
Moreover, where a criminal statute is ambiguous, as it is here,
the rule of lenity informs the Court's decision.  See Bennett v.
United States, 868 F.3d 1, 23 (1st Cir.), opinion withdrawn and
vacated, 870 F.3d 34 (1st Cir. 2017) (noting that "the rule of
lenity . . . serve[s] the additional and important purpose of
ensuring 'the proper balance between Congress, prosecutors, and
courts'") (quoting United States v. Bowen, 127 F.3d 9, 13 (1st
Cir. 1997)); see also Leocal v. Ashcroft, 543 U.S. 1, 11 n.8

(2004) ("Even if § 16 lacked clarity . . . we would be constrained to interpret any ambiguity in the statute in petitioner's favor."). The Court holds that, in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility; it should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime.

The Government's approach, while reasonable, is problematic in several ways. First, it effectively requires the Court to employ a prosecutor-friendly "way-back machine" to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect. For example, here, the Court is not confident that a well-counseled defendant caught with 28.77 grams of crack cocaine and a reasonable prosecutor from this District would have reached a plea deal of 28 grams or more of crack cocaine, thereby triggering the mandatory minimum by a mere .77 grams of crack cocaine. Indeed, it seems likely in this Court's experience the parties would have agreed to a plea to a lower quantity.

Second, this approach does not reflect the on-the-ground realities of federal sentencing. Following the Fair Sentencing Act of 2010, the new Guidelines mirror the new statutory minimums. For a defendant like Pierre, who was sentenced above the statutory minimum, it is the change in the Guidelines that drives, as a practical matter, any change in sentence. Cf. Dorsey, 567 U.S. at 278 (finding persuasive that Congress intended the Fair Sentencing Act to apply to offenders who committed the offense before, but were not sentenced until after, the effective date of the law, because otherwise "the 1986 Drug Act's old minimums would trump those new Guidelines for some pre-Act offenders but not for all of them"). Third, relief under the Act is ultimately within the discretion of the Court; there is no automatic reduction. It makes sense that Congress intended to give a certain class of defendants -- those who were sentenced under a statute for which the penalties changed in 2010 -- a do-over. Accordingly, the more sensible interpretation of the statute favors erring on the side of allowing the sentencing court to determine whether a specific defendant is entitled to relief given several factors, including the underlying drug quantity.

The Government is correct that Congress could have simply stated "the sentencing court may reduce the sentence of any defendant convicted of a cocaine base offense who was sentenced

prior to the effective date of the 2010 Fair Sentencing Act."
See Gov't Supp. Resp. in Opp'n 3, ECF No. 60.  But the fact that
Congress could have been clearer does not mean it meant
something else that is both awkward and unfair.  Much of the
federal judiciary's work revolves around figuring out what
Congress meant when it could have phrased something more
clearly.  See Robert A. Katzmann, Judging Statutes 104-05
(Oxford Univ. Press 2014) ("When judges interpret the words of
statutes, they are not simply performing a task.  They are
maintaining an unspoken covenant with the citizenry on whose
trust the authority and vitality of an independent judiciary
depend, to render decisions that strive to be faithful to the
work of the people's representatives memorialized in statutory
language.").

III. CONCLUSION

For these reasons, the Court found Defendant eligible for
relief under the First Step Act and entered the March 8, 2019
Order, ECF No. 63, reducing Defendant's sentence to time served.
IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: April 5, 2019